# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ADAMM LINTON,

      Petitioner,

v.                                                                             Case No. 11-C-1112

WILLIAM POLLARD,

      Respondent.

## DECISION AND ORDER

On December 8, 2011, Adamm Linton filed this petition pursuant to 28 U.S.C. § 2254, alleging that his sentence was imposed in violation of the Constitution. Linton is currently incarcerated at Waupun Correctional Institution for first-degree reckless homicide and felony murder. The Court gave Linton leave to proceed in an order (ECF No. 9) on January 17, 2012. The case is before me now for resolution.

## BACKGROUND

The basic facts of the case are not disputed. On August 31, 2007, Linton was in custody for receiving stolen property. (ECF No. 14-9 at 14–15.) Detectives Lynda Stott and Cameo Barbian-Ganyan interviewed him in the course of investigating the homicide of Francisco Cuey. (*Id.* at 14–15.) After Barbian-Ganyan read Linton his rights, Linton asserted his right to silence. (*Id.* at 17–19.) The detectives terminated the interview. (*Id.* at 20.) The interview was never

recorded. (ECF No. 14-9 at 18.) Both detectives testified Linton never asked for a lawyer. (*Id.* at 19.)

Stott and Barbian-Ganyan briefed the new shift at the shift change. (*Id.* at 32–33.) Detectives Salaazar and Lough again interviewed Linton approximately five to six hours later. (*Id.* at 40–41.) Salaazar read Linton his *Miranda* rights. (*Id.* at 43.) After each right, Salaazar asked Linton if he understood; Linton said yes. (*Id.* at 44.) When Salaazar concluded reading Linton's rights, Linton asked, "[W]hen I asked for a lawyer earlier, why wasn't he appointed to me?" or words to that effect. (*Id.* at 44.) Salaazar responded, "[A]re you asking for a lawyer right now because if you are, we'll just stop talking to you." (*Id.* at 44.) Linton said "no" and that he was willing to talk to Salaazar and Lough. (*Id.* at 44.) Linton then gave the statement in question. (*Id.* at 45.)

Prior to trial, the Circuit Court of Milwaukee County, Wisconsin, granted the State's motion to join two crimes with which Linton had been separately charged. (ECF No. 14-6 ¶ 13.) Over Linton's objection, the circuit court admitted two autopsy photographs of the victim of one of the crimes, Francisco Cuey. (*Id.* ¶ 24.) Linton appealed his convictions to the Wisconsin Court of Appeals. He presented the following issues on appeal: (1) the circuit court erred in denying a motion to suppress a statement Linton gave to police because he unequivocally and unambiguously invoked his right to counsel, which police did not honor; (2) the circuit court erroneously granted joinder of the two crimes which resulted in Linton's convictions; and (3) the circuit court erroneously admitted prejudicial photographs of Francisco Cuey. (ECF No. 14-3.)

## ANALYSIS

Linton's petition is covered by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, if a state court adjudicated a constitutional claim on the merits, a federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 376–77 (2000). The petitioner bears the burden of proving that the state courts' application of federal law was unreasonable, and the "unreasonable application" prong of § 2254(d) "is a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

A suspect in custody must unequivocally and unambiguously invoke his or her right to counsel before police are required to stop an interview. *Davis v. United States*, 512 U.S. 452, 459 (1994). A request for counsel is ambiguous if "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel. . . . " *Davis*, 512 U.S. at 459 (emphasis in original).

Linton argues he is entitled to habeas corpus relief because he claims he unequivocally and unambiguously invoked his right to counsel during police questioning and that the police did not honor his invocation. (ECF No. 2 at 10–12.) Linton's claim for relief rests on his request for counsel during the Stott/Barbian-Ganyan interview. Here, as in state court, Linton contends that his statement—"When I asked for a lawyer earlier, why wasn't he appointed to me?"—constituted an unequivocal, unambiguous invocation of counsel. (ECF No. 2 at 12.)

3

The circuit court found that in light of the circumstances here, Linton's question was an ambiguous request. (ECF No. 14-6 ¶ 11.) "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, ___ U.S. ___, 31 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When asked in a follow-up question if Linton was invoking his right to counsel, Linton explicitly said "no." (ECF No. 14-9 at 44.) He then proceeded to speak with the officers. On these facts, Linton cannot demonstrate no fair-minded jurist would find his question "ambiguous" under the circumstances. His question cannot be taken out of context and in the context of the situation — most importantly, the officers asking the followup question "are you asking for a lawyer right now" — I cannot conclude there is *no* fair-minded jurist who would find Linton's invocation ambiguous.

Of course, the rights created by *Miranda* also include a right to remain silent. Linton does not claim in his petition that this right was violated, however, and it appears he never asserted it in state court either. Presumably, the claim was not asserted because the facts did not support it. As set forth above, the evidence was that two different officers came to question Linton after a significant time period (six hours) had passed. In *Michigan v. Mosley*, the Supreme Court held that the admissibility of statements obtained after a defendant invokes his right to remain silent is dependent on whether the defendant's right to cut off questioning was "scrupulously honored." 423 U.S. 96, 103 (1975). The Court set forth several nonexclusive factors to determine whether interrogation was properly resumed. *Id.* These factors include "an inquiry into the amount of time that lapsed between interrogations; the scope of the second interrogation; whether new Miranda warnings were given; and the degree to which police officers pursued further interrogation once the

4

suspect had invoked his right to silence." *United States v. Schwensow*, 151 F.3d 650, 658 (7th Cir. 1998) (citing *Mosley*, 423 U.S. at 104–105); *accord United States v. Gillaum*, 372 F.3d 848, 856 (7th Cir. 2004). Here, several hours passed between the two interrogations, new officers came to investigate, and Linton was immediately Mirandized both times. It thus appears that this claim would also fail on the merits, even if it had not been waived.

Linton also claims that he is entitled to habeas relief because the two charges against him were improperly joined, resulting in unfair prejudice, and that the state court erroneously exercised its discretion in allowing graphic autopsy photographs into evidence. The screening order noted that a more complete record was needed to determine whether the State courts' rejection of these claims resulted from an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. (ECF No. 9 at 2.) The screening order specifically referred to two cases, *Biskup v. McCaughtry*, 20 F.3d 245 (7th Cir. 1994), and *Gonzalez v. DeTella*, 127 F.3d 619 (7th Cir. 1997), which both indicate ordinarily such claims are state law claims only rarely implicating the Due Process Clause of the United States Constitution. Upon review I am now convinced Linton has procedurally defaulted on these claims because he did not present them to the Wisconsin Court of Appeals as due process claims and even assuming, *arguendo*, that the claims have not been defaulted, I find the claims nevertheless fail on the merits.

"Initially, the state courts must have had a 'fair opportunity' to consider a question of constitutional import before federal collateral review on that question is appropriate." *Kurzawa v. Jordan*, 146 F.3d 435, 441 (7th Cir. 1998) (citing *Burgin v. Broglin*, 900 F.2d 990, 996 (7th Cir. 1990)). *See also Patrasso v. Nelson*, 121 F.3d 297, 301 (7th Cir. 1997). "A 'fair presentment' of

5

a petitioner's claims requires that a petitioner give state courts 'a meaningful opportunity to pass upon the substance of the claims [petitioner] later presses in federal court.'" *Spreitzer v. Schomig*, 219 F.3d 639, 645 (7th Cir. 2000) (quoting *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999)). To satisfy that requirement, an inmate must present "both the operative facts and the legal principles that control each claim to the state judiciary[.]" *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). *See also Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001).

In determining whether a petitioner has fairly presented a federal constitutional claim to the state judiciary, the habeas court should examine four factors: (1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 454 (7th Cir. 1984); *Verdin v. O'Leary*, 972 F.2d 1467, 1473–74 (7th Cir. 1992). If none of the four factors is present and the state has not otherwise signaled its satisfaction with the presentment of the federal claim, "then [the habeas] court will not consider the state courts to have had a fair opportunity to consider the claim." *See Verdin*, 972 F.2d at 1474; *Moleterno v. Nelson*, 114 F.3d 629, 634 (7th Cir. 1997). On the other hand, "the presence of any one of these factors, particularly factors (1) or (2), does not automatically avoid a waiver[.]" *Verdin*, 972 F.2d at 1474. Before the Wisconsin Court of Appeals, Linton relied on Wis. Stat. § 971.12 as the controlling authority for joinder. (ECF No. 14-3 at 20.) He gave the state law standard of review; he cited no federal case law nor did he refer to the Due Process Clause. (ECF

6

No. 14-3 at 19.) Respondent thus argues he has procedurally defaulted and even given the liberal constructions afforded *pro se* petitioners, I agree.

Linton's claims on these grounds fail on the merits, as well. To the extent Linton is attempting to invoke due process in his claim, the joinder statute is "to be construed broadly in favor of initial joinder." *State v. Hoffman*, 106 Wis. 2d 185, 208 (Ct. App. 1982). Joinder may be obtained when two or more crimes "are of the same or a similar character" meaning they must be "the same types of offenses occurring over a relatively short period of time and the evidence as to each must overlap." Wis. Stat. § 971.12(1); *State v. Hamm*, 146 Wis. 2d 130, 138 (Ct. App. 1988). Even where joinder is proper, a defendant may move to sever the counts on the basis of prejudice. Wis. Stat. § 971.12(3). In order to establish that the trial court erroneously exercised its discretion, the defendant must establish that he suffered "substantial prejudice." *State v. Locke*, 177 Wis. 2d 590, 597 (Ct. App. 1993).

Linton contends the initial joinder was improper because there was an insufficient overlap in evidence. But both cases involved homicides that ensued after efforts that were made to take property from another within a one-week time frame. Furthermore, it was only through police investigation of one homicide that they connected Linton to the second. Finally, there is no evidence Linton moved for severance and Linton did not show a "certainty of prejudice" resulting from joinder of the case. *See Hoffman*, 106 Wis. 2d at 210. In light of the statute's broad, favorable interpretation of joinder, I cannot conclude joinder was improper so as to prejudice Linton. His claim on this ground will therefore be denied.

Linton's argument on the admissibility of the photographs is similarly flawed. As discussed above, this is not a cognizable federal claim. To the extent that he is attempting to allege a due

7

process claim, the admission of photographs into evidence is a matter of the trial court's discretion. *State v. Pfaff*, 269 Wis. 2d 786. A court's discretionary decision in this area should not be disturbed unless "it is wholly unreasonable or the only purpose of the photographs is to inflame and prejudice the jury." *Id.*

The trial court explained that it allowed the admission of the photographs because the allegation was that bolt cutters had been used as a dangerous weapon and the State therefore had to establish whether or not there was a felony murder (with the underlying offense being burglary while armed with a *dangerous* weapon) (emphasis added). The trial court explicated that it was mindful of the potential prejudice of the photographs but reasoned that any potential prejudice was outweighed by the probative value. Given the deferential standard of review, I cannot say the trial court abused its discretion in allowing in the photographs.

Finally, pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may "only issue if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4). When a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Linton's petition fails on multiple grounds and consequently I cannot say reasonable jurists would find it debatable.

**CONCLUSION**

For the reasons given above, I conclude the state courts' resolution of the issues presented did not involve an unreasonable application of any controlling Supreme Court precedent, nor did it involve an unreasonable determination of any facts. 28 U.S.C. § 2254(d). Linton's petition is DENIED and the case DISMISSED. The certificate of appealability is also DENIED. The clerk is directed to enter judgment in favor of Respondent.

Dated this   16th   day of May, 2012.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge